IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TOBY G. BREON,** | : CIVIL ACTION NO. 1:06-CV-2204 |
| | : |
| Plaintiff | : (Judge Conner) |
| | : |
| v. | : |
| | : |
| **WAYPOINT INSURANCE GROUP,** | : |
| **INC., et al.,** | : |
| | : |
| Defendants | : |

## MEMORANDUM

Presently before the court is the motion of defendants Clair Odell Insurance Agency, LLC and HUB International Pennsylvania, LLC (collectively "Odell")[1] to dismiss the tortious interference claim asserted by plaintiff Toby G. Breon ("Breon"). For the reasons that follow, the motion will be denied.

## I.     Factual Background[2]

Beginning in 2000, Breon was employed by defendant Waypoint Insurance Group, Inc. ("Waypoint Insurance"), a company that was in the business of providing "property and casualty insurance services and products." (Doc. 1 ¶¶ 3, 9.) Breon was "an extremely successful insurance producer" and was "personally responsible for generating approximately 30 percent" of the company's revenue in

---

[1] Pursuant to an agreement executed in 2006, Clair Odell Insurance Agency, LLC merged into HUB International Pennsylvania, LLC. (Doc. 6 at 1 n.1; Doc. 13 at 4 n.2.)

[2] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint. See infra Part II. The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

2004. (Id. ¶ 10.) As a Waypoint Insurance employee, Breon was a participant in the Waypoint Employee Stock Ownership Plan ("ESOP") and the Waypoint Incentive Stock Option Plan. Breon was also eligible for "an annual bonus in addition to his commissions." (Id. ¶ 11.)

On March 9, 2004, Waypoint Financial Corporation ("Waypoint Financial"), the parent company of Waypoint Insurance, reached a final merger agreement with defendant Sovereign Bancorp, Inc. ("Sovereign").[3] (Id. ¶ 12.) Pursuant to the merger agreement, Waypoint Financial agreed to sell the property and casualty division of Waypoint Insurance to a third party before the merger's effective date of January 21, 2005. (Id. ¶¶ 4, 13.) By the end of October 2004, Waypoint Financial had chosen Odell as that third party. (Id. ¶ 14.)

Given Breon's role as the "highest volume insurance producer" for Waypoint Insurance, the sales agreement between Waypoint Financial and Odell "was subject to a substantial reduction in sales price" if Breon did not agree to sign an employment contract with Odell. (Id.) This convergence of interest between Waypoint Financial, Waypoint Insurance, and Odell prompted the companies to "engage[] in concerted activity" to secure Breon's employment with Odell. (Id. ¶ 16) To that end, the officers of Waypoint Insurance and Waypoint Financial "directed" Breon to Odell's Chief Operating Officer Robert Hill ("Hill") to begin employment negotiations. (Id. ¶¶ 47-48.) By the end of October 2004, Breon had attempted to

---

[3] Sovereign is a party to the above-captioned case solely because it is Waypoint Financial's "successor in interest." (Doc. 1 ¶ 4.)

enter into employment negotiations with Odell "in good faith." (Id. ¶¶ 22, 49.) According to Breon, Hill "repeatedly made himself unavailable" to negotiate until about November 8, 2004. (Id. ¶ 49.) One day later, on November 9, 2004, the parties' negotiations stalled when Hill refused to reduce certain promises to writing and insisted that Breon sign a non-competition agreement. (Id. ¶ 23.) Accordingly, Hill sought help from the officers of Waypoint Insurance and Waypoint Financial in convincing Breon to sign the proffered employment contract. (Id. ¶ 24.)

On November 10, 2004, an officer of Waypoint Financial informed Breon that if he did not sign an employment agreement with Odell by 4:00 p.m. that day, he would "suffer immediate loss" of his employment, his 2004 ESOP allocation, his unvested stock options, and his annual bonus. (Id. ¶ 25.) At approximately 1:00 p.m., Hill advised officers of both Waypoint Insurance and Waypoint Financial that negotiations had ended and an agreement had not been reached. (Id. ¶ 50.) Breon alleges that Hill acted with the knowledge that Waypoint Financial intended to terminate Breon's employment if an agreement could not be reached and that such termination would result in:

> substantial damage to Mr. Breon in lost compensation and benefits, including lost commissions, lost ESOP allocations and windfall allocations associated therewith, lost stock options, . . . lost annual bonus, and . . . substantial emotional distress.

(Id. ¶¶ 51-52.) Breon further alleges that Hill's actions were motivated by a belief that Waypoint Financial's termination of Breon's employment would "coerce" Breon into accepting the employment contract proffered by Hill. (Id. ¶ 55.)

Contrary to Hill's statement that negotiations had ended at 1:00 p.m., Breon alleges that he continued to negotiate with Hill "into the evening of November 10, 2004 and thereafter." (Id. ¶ 53.) Breon concedes that he had not reached an agreement with Hill by the 4:00 p.m. deadline, but argues that Hill should have informed Waypoint Insurance and Waypoint Financial "that in fact negotiations were ongoing." (Id. ¶¶ 26, 54.) At approximately 4:10 p.m., an officer of Waypoint Financial terminated Breon's employment. (Id. ¶ 27.)

On November 9, 2006, Breon commenced the above-captioned action. (See id.) Breon claims that Waypoint Insurance and Waypoint Financial improperly terminated his employment and violated Section 520 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140. (Id. at 5-13.) Breon also claims that Odell tortiously interfered with his business relationship with Waypoint Insurance. (Id. ¶ 57.) Odell now moves to dismiss this claim. (Doc. 6.) The motion to dismiss has been fully briefed and is ripe for disposition.

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In the context of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). Although the court is generally limited in its review to the face of the complaint, it "may also consider

matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules do not require plaintiffs to allege affirmatively every aspect of their claims, but only to present sufficient facts to allow the opposing party to conduct discovery and prepare a defense. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, courts should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.; see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). Under this liberal pleading policy, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**III.    Discussion[4]**

To establish a tortious interference with contract claim under Pennsylvania law, a plaintiff must plead the following elements:

(1) the existence of a contractual . . . relation between the [plaintiff] and a third party;
(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation . . .;
(3) the absence of privilege or justification on the part of the defendant; and
(4) the occasioning of actual legal damage as a result of the defendant's conduct.

CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004); see also Buskirk v. Apollo Metals, 307 F.3d 160, 172 (3d Cir. 2002).  In the instant case, Breon has clearly alleged that he had an employment contract with Waypoint Insurance and that Odell's conduct resulted in damages in excess of $120,000.  (Doc. 1 ¶ 9; Doc. 1 at 16.)  Accordingly, the dispute in the instant case centers around whether Breon has adequately pled the second and third elements.

In interpreting these elements, Pennsylvania courts have expressly adopted the Restatement (Second) of Torts, which focuses on whether the alleged tortfeasor engaged in "improper conduct."  Crivelli v. Gen. Motors Corp., 215 F.3d 386, 395 (3d Cir. 2000) (citing RESTATEMENT (SECOND) OF TORTS §§ 766-67); see also Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1183-84 (Pa. 1978).

---

[4] Jurisdiction over the instant action is based on diversity of citizenship, see 28 U.S.C. § 1332, and neither party disputes the applicability of Pennsylvania law to plaintiffs' claims, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938); see also Borse v. Pierce Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir 1992) (federal courts sitting in diversity must apply the substantive law of the forum state).

What qualifies as improper conduct escapes precise definition and requires a "case-by-case inquiry." Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 663 (3d Cir. 1993). Generally, conduct is considered improper if is not "socially acceptable" and does not comport with "the rules of the game which society has adopted." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1382 (3d Cir. 1992). When determining whether conduct is improper, the Restatement directs the court to consider the following factors:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties.

RESTATEMENT (SECOND) OF TORTS § 767.

While Odell urges the court to weigh the Restatement's factors to determine the propriety of its conduct at this stage, the court finds that such a fact-sensitive inquiry is more appropriately reserved for summary judgment. In fact, our sister court in the Eastern District of Pennsylvania has held that, in the context of a Rule 12(b)(6) motion, the Restatement's impropriety test is met by simple allegations that the defendant had "a knowing and purposeful intent to interfere" with a contract. Odyssey Waste Servs., LLC v. BFI Waste Sys. of N. Am., Inc., No. Civ.A. 05-CV-1929, 2005 WL 3110826, at *7 (E.D. Pa. Nov. 18, 2005) (citing Total Care Sys., Inc. v. Coons, 860 F. Supp. 236, 242 (E.D. Pa. 1994)). As the court stated in Odyssey,

conducting a more thorough analysis of the Restatement's factors would "require at least some discovery."  2005 WL 3110826, at *7.

In the instant case, as in <u>Odyssey</u>, Breon alleges that Odell acted with the intention of inducing Waypoint Insurance and Waypoint Financial to terminate his employment contract.  (Doc. 1 ¶ 55.)  Breon further alleges that Odell did not have "any privilege or justification cognizable under the law" for doing so.  (<u>Id.</u> ¶ 56.)  Accepting these allegations as true, as the court must do in the restricted posture of a motion to dismiss, leads to the conclusion that Odell's actions were improper and neither privileged nor justified.  Accordingly, the motion to dismiss will be denied.

An appropriate order will issue.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       May 31, 2007

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TOBY G. BREON,** | : CIVIL ACTION NO. 1:06-CV-2204 |
| **Plaintiff** | : (Judge Conner) |
| v. | : |
| **WAYPOINT INSURANCE GROUP, INC., et al.,** | : |
| **Defendants** | : |

## **ORDER**

AND NOW, this 31st day of May, 2007, upon consideration of the motion to dismiss (Doc. 6), filed by defendants Clair Odell Insurance Agency, LLC and HUB International Pennsylvania, LLC, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion to dismiss (Doc. 6) is DENIED.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge